### Sargent v. Sargent, et al.

(Decided January 11, 1927.)

#### Appeal from Pike Circuit Court.

1. Trusts—Evidence Held Insufficient to Establish Resulting Trust in Husband's Property, Claimed to have been Purchased with Widow's Money.—In widow's action against deceased husband's heirs to have certain property of her husband's adjudged as her own, evidence held insufficient to establish resulting trust in favor of plaintiff on ground that her money was used to purchase property claimed.

2. Trusts—Resulting Trust may be Established by Parol Evidence.—It is well established that resulting trust may be proved by parol evidence.

3.   Trusts—Parol Evidence to Establish Resulting Trust Must be
     Clear and Convincing.—Parol evidence to establish resulting trust
     must be clear and convincing, leaving no serious doubt that facts
     proven are sufficient to establish trust.

ROSCOE VANOVER for appellant.

MOORE & CHILDERS for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Lou Sargent, the widow of W. E. Sargent, instituted this action in the Pike circuit court against Dewey Sargent and the other appellees who are children of W. E. Sargent, asking that a resulting trust be declared in her favor and that a certain tract of land described in the petition be adjudged her property because it was paid for with her money by her husband, W. E. Sargent, and that he took a title bond for a conveyance of the land to himself in his name without her knowledge or consent. Appellant is the step-mother of appellees. W. E. Sargent is dead.

It appears from the proof that George W. Potter conveyed to W. E. Sargent and the appellant, Lou Sargent, a certain tract of land on the 11th day of October, 1920. Thereafter W. E. Sargent and his wife, Lou Sargent, conveyed a portion of said land to Willie Wallace and Alafaire Wallace, for which they received $425.-00. Later they conveyed the remainder of the tract to David K. Adkins, for which they received $1,500.00. The appellant, Lou Sargent, testified without objection that she received only $500.00, of the $1,925.00, for which the land was sold. This money she placed in a bank at Hellier, Kentucky, and it remained in the bank a short time when she withdrew it and loaned it to one Joel Ratcliff. The money was paid by Joel Ratcliff to W. E. Sargent according to the testimony of appellant. She further testified that her husband, W. E. Sargent, told her that he would take the $500.00, and purchase the tract of land in controversy from J. M. Gibson, and that he would have the deed made to her. He took the money and made the purchase according to her evidence and caused a title bond to be executed to himself without her knowledge. She makes the assertion in her testimony that the $500.00, which her husband collected from Joel Ratcliff was used to pay for the land purchased from Gibson. She does not say how she knows this to be a fact and does not claim that she was present when the trade was made or when

the land was paid for. She introduced another witness who testified that W. E. Sargent told him that he paid for the land with $500.00 of his wife's money. One other witness was introduced who heard W. E. Sargent state that he paid for the land with the $500.00, which he obtained from the appellant. If there were no other evidence in the case this might be sufficient to establish the existence of a resulting trust in her favor. It is a part of the established law of this state that a resulting trust may be established by parol evidence, but in all cases where it is sought to establish a resulting trust by parol evidence the evidence establishing such trust must be clear and convincing and must leave no serious doubt in the mind that the facts proven are sufficient to establish such a trust.

J. M. Gibson, the man from whom the land in controversy was purchased, testified in the case as a witness for appellant. He sold the land to W. E. Sargent on the 8th day of February, 1923. At the time he testified there was an unpaid balance of the purchase money amounting to $43.25. On cross-examination he was asked how W. E. Sargent paid for the land and, according to his answer, a horse and wagon were accepted by him from Sargent in payment of $200.00 of the purchase price; $100.00 was paid in money and the balance, except that which remains unpaid, was paid in goods and merchandise. The payments were made at different times. It appears that W. E. Sargent executed his note to J. M. Gibson in part payment for the land and it is a balance on the note which remains unpaid.

Dewey Sargent, one of the appellees, testified about the payment of the purchase price of the land in controversy, and his testimony fully corroborates that of J. M. Gibson. He settled his father's estate and helped to assign to his stepmother, the appellant, the property allowed her by law, and paid to her $330.00, to make up the difference between the property on hand and the $750.00, allowed her by law as the widow of W. E. Sargent. At no time according to his testimony did appellant ever claim that the estate of W. E. Sargent was indebted to her, and she never at any time made any claim to the land. The title bond appears to have remained in her possession until the estate had been settled. The $100.00 which was paid on the land by W. E. Sargent appears to

have been borrowed from B. L. Francesco and James W. Childers.

It seems to us that the evidence is conclusive that the land in controversy was not paid for with money belonging to the appellant.

The case is somewhat similar to Pool, et al. v. Thomas, et al., 8 S. W. 198, 10 Ky. Law Reporter 92. In that case the court said:

> "There is proof in the case which tends to show that C. C. Thomas agreed with his wife, Mary M. Thomas, to use the money which she was to receive from her father's estate in the purchase of a home in this state, and have the deed made to her and her bodily heirs; that, after the purchase of the land in controversy, he paid for it with the money that he received from her father's estate; that he often promised her to make her a deed to the land, and he, a short time before her death, told her he had done so. On the other hand, there is proof in the case that he said that he had paid for the land with the proceeds of a crop or crops of tobacco he had raised on the farm.

> "The proof of the agreement consists in the recollection of the witnesses, twenty-six years after it is alleged to have been made, of what they heard C. C. Thomas and Mary M., his wife, say about it, and the proof of these witnesses does not clearly establish the fact of the agreement, but, at most, their evidence is only moderately persuasive that such an agreement was made. As to the payment for the land with Mary M.'s money the proof, while it tends in that direction, by no means clearly establishes the fact, and when it is considered in connection with the proof that C. C. Thomas claimed that he paid for the land with the proceds of his tobacco the dubiousness, as to the truth of the matter, is still more serious."

The most that could be said in favor of appellant in this case is that the evidence is conflicting. The circuit court adjudged that the proof was not sufficient to establish a resulting trust in favor of appellant. With that conclusion we agree.

The judgment of the lower court is affirmed.